## 20522

Don STOCKTON, Appellant, v. William D. LEEKE, Respondent. Franklin DENNISON, Appellant, v. STATE of South Carolina, Respondent.

(237 S. E. (2d) 896)

*Roy T. Stuckey, Vance L. Cowden* and *John L. David-son,* of Columbia, *for Appellant,*

*Daniel R. McLeod, Atty. Gen., Emmet H. Clair* and *Kenneth L. Childs, Asst. Attys. Gen.,* of Columbia, *for Respondents,*

October 5, 1977.

*Per Curiam:*

In unrelated cases, the appellants were convicted of safecracking with tools and each received a ten (10) year sentence on that conviction.

These cases have been consolidated on appeal from denials of post-conviction relief because each contains the common question of whether the ten (10) year minimum sentence for safecracking committed with tools provided by Section 16-11-390 of the South Carolina Code (1976), formerly Section 16-337 of the 1962 Code, constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

The basic rule for an attack on a sentence in South Carolina was laid down in *State v. Conally,* 227 S. C. 507, 510, 88 S. E. (2d) 591, 593 (1955), where this Court stated "This Court has no jurisdiction to disturb,

because of alleged excessiveness, a sentence which is within the limits prescribed by statute, unless: (a) the statute itself violates the constitutional injunction, Article 1, Section 19, against cruel and unusual punishment, or (b) the sentence is the result of partiality, prejudice, oppression, or corrupt motive."

There being no allegations falling within the latter portion of the above rule, the question presented requires us to consider the minimum sentence for safecracking as measured against the prohibition against cruel and unusual punishments contained in the Eighth Amendment of the United States Constitution.

Where, as here, we are considering the constitutionality of a punishment in the abstract, we are guided by two principles. First, the historical principle that the cruel and unusual punishment clause is designed to prevent inhuman and barbarous treatment. Second, that the sentence must not be grossly out of proportion with the severity of the crime. *State v. Gamble,* 249 S. C. 605, 155 S. E. (2d) 916 (1967), *cert. den.* 390 U. S. 927, 88 S. Ct. 862, 19 L. Ed. (2d) 988; *Gregg v. Georgia,* 428 U. S. 153, 96 S. Ct. 2909, 49 L. Ed. (2d) 859 (1976).

We are concerned here only with the second principle. South Carolina has long recognized the concept requiring the sentence to be in proportion to the crime. *E.g.* S. C. Const. Art. XL (1778). More recently, this Court has reaffirmed the concept that a sentence, though not cruel and unusual in kind, may be so severe in duration as to be cruel and unusual. *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273 (1948); *State v. Gamble, supra.*

In considering the proportionality of a sentence, we are mindful that a punishment is selected by the members of the legislature, whose ability to evaluate the moral consensus toward a punishment and its social utility as a sanction cannot be denied. *See Gregg v. Georgia, supra.*

The presumption of validity extends to the statute in question here, and appellants must assume the heavy burden of persuading us that this penalty is without justification and is unconstitutionally severe. See generally 6 West's South Carolina Digest, *Constitutional Law,* Key Nos. 48, 70.3.

The first test in a proportionality analysis is a subjective one, in which the consideration is whether the punishment shocks the collective conscience of our society. This standard reflects more than a disagreement with the wisdom of the legislature. Due to the difficulty in analyzing subjective standards, we will not discuss this standard. It suffices to say that we are not convinced that the conscience of society has been shocked.

The second test is an objective one, which looks to the gravity of the offense, *Willis v. Leeke,* 225 S. C. 230, 178 S. E. (2d) 251 (1970), to the legislative purpose behind the sentencing statute, to a comparison of a defendant's punishment, to punishments in other jurisdictions for the same offense, and to a comparison of other punishments available in the same jurisdiction for other offenses. *See e.g. Hart v. Coiner,* 483 F. (2d) 136 (4th Cir., 1973), *cert. den.,* 415 U. S. 983, 94 S. Ct. 1577, 39 L. Ed. (2d) 881; *People v. Broadie,* 37 N. Y. (2d) 100, 371 N. Y. S. (2d) 471, 332 N. E. (2d) 338 (1975), *cert. den.* 423 U. S. 950, 96 S. Ct. 372, 46 L. Ed. (2d) 287.

The gravity of the crime of safecracking could reasonably have been found by the legislature to be great. Safes are designed and purchased to provide a place of safekeeping for highly valuable and confidential items. One who would steal the more valuable items shows greater determination and may pose a much greater threat to society both physically and economically than a mere petty thief.

While it is a recognized principle that long sentences lessen the chances of rehabilitation, the legislature may have felt that the longer minimum sentence was necessary in order

to isolate those who would commit such an offense and to deter others from similar conduct.

As to a comparison of the minimum penalty for safecracking with the penalties provided for similar and other offenses, it suffices to say that we have considered this type of attack before. *State v. Haulcomb,* 260 S. C. 260, 195 S. E. (2d) 601 (1973), *app. dismissed* 414 U. S. 886, 94 S. Ct. 229, 38 L. Ed. (2d) 134. There, in relation to the maximum sentence for safecracking, we said that "The argument that the penalty is out of proportion to other penalties provided by statutory law has some appeal, but the argument is basically an attack on the wisdom of the statute. It does not persuade us that it is unconstitutional." 195 S. E. (2d) at 604.

The offenses and sentences cited by appellants for comparison with the offense and sentence here are almost all violent crimes with shorter minimum sentences. What appellants have apparently overlooked is that most of the crimes cited may arise as acts of passion in the heat of a moment, while safecracking is far more likely to be deliberate and carefully planned. The legislature may have felt that safecracking is more likely to be the act of a professional criminal, who is consequently less likely to be rehabilitated and thus they may have felt that a longer sentence would be necessary to deter this type of crime.

For these reasons and relying on *State v. Haulcomb, supra,* we remain unconvinced of the unconstitutionality of the minimum sentence for safecracking.

Appellant Dennison also alleges a violation of equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution, in that appellant, although he was seventeen years old when the safecracking was committed and when he was convicted, was ineligible for sentencing under the Youthful Offender Act. The maximum sentence for safecracking is life imprisonment if the jury does not recommend mercy and the Youthful Offender

Act is expressly made inapplicable to all those convicted of crimes in which the maximum sentence is death or life imprisonment. *See* S. C. Code Sections 24-19-10(d), (f) and 24-19-50 (1976) (formerly Sections 55-392(d), (f) and 55-395 of the 1962 Code).

The gist of appellant Dennison's argument is that safecracking is no more serious than other crimes, for which sentencing is provided for by the Youthful Offender Act.

However, the legislature provided life imprisonment as the maximum sentence for safecracking. All crimes for which the maximum sentence is life imprisonment are excluded from consideration under the Youthful Offender Act. It was within the province of the legislature to determine how serious specific offenses are and what sentences are appropriate. "But the guaranty of equal protection of the laws does not affect the right of a state to punish one offense more severely than another." 21 Am. Jur. (2d) *Criminal Law—Punishment,* Section 582.

Thus, the appellant is not similarly situated with those included under the Youthful Offender Act, but instead is similarly situated with those excluded.

For the foregoing reasons, we hold that the minimum sentence of ten (10) years imprisonment provided for safecracking under Section 16-11-390 of the Code does not constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. We further hold that it is not a denial of equal protection to exclude those convicted of safecracking from consideration for sentencing under the Youthful Offender Act.

All exceptions are overruled and the judgments of the lower courts are affirmed.