Gene HAM # 67504, Petitioner,

v.

William D. LEEKE, Director, and the Attorney General of the State of South Carolina, Respondents.

Civ. A. No. 76–237.

United States District Court, D. South Carolina, Columbia Division.

April 19, 1978.

Gene Ham, pro se.

Daniel R. McLeod, Atty. Gen. for the State of S. C., and Emmet H. Clair, Asst. Atty. Gen. for the State of S. C., Columbia, S. C., for respondents.

## ORDER

HEMPHILL, District Judge.

The petitioner in this § 2254 habeas action has submitted an affidavit requesting a transcript of a hearing held in Columbia on August 3, 1977 during which the court heard extensive testimony concerning the petitioner's various grounds for relief. His undated affidavit claims that he did not receive a copy of this court's order of October 3, 1977 until March 6, 1978, that he is "appealing the decision," and needs the transcript to perfect the appeal.[1] For reasons to be outlined, the request for the transcript at public expense must be denied.

This action was originated by the filing of Ham's *pro se* petition for a writ of habeas corpus on February 10, 1976. Within a month of the date of filing, petitioner Ham retained Mr. Foard. After attorney Foard appeared, this court and its support personnel sent all required notices and copies of orders issued to him, consistent with normal procedure under 28 U.S.C. § 1654. Unfortunately, petitioner Ham believes he is more knowledgeable than any attorney who has represented him,[2] and he has insisted upon filing *pro se* pleadings without the knowledge or consent of his retained attorney. As a result of Ham's *pro se* excursions on an *ex parte* basis without Mr. Foard's knowledge, this litigation has recorded a rather tortuous history.[3]

1. The order was filed on October 4, 1977, and the Clerk's records show that two copies were mailed to the petitioner's attorney, John W. Foard, Jr., Esquire, of Columbia, and a copy was sent to the respondents' counsel. Rule 77(d) and Rule 5(b) of the Federal Rules of Civil Procedure were therefore followed.

2. One of Ham's grounds for habeas relief was a claim that the retained attorneys who represented him at trial on a heroin offense were ineffective. This claim has never been fairly presented to a state court.

3. While this court was endeavoring to discharge its duty by responding to matters properly submitted by Ham's attorney, Ham engaged the attention of both the Court of Appeals (*In re Ham,* 4th Cir. 586 F.2d 837) and the United States Supreme Court (*Ham v. Hemphill,* 434 U.S. 813, 98 S.Ct. 239, 54 L.Ed.2d 162) without Foard's knowledge. *Pro se* requests for mandamus were submitted to both Richmond and Washington. One of the requests to the Court of Appeals (apparently two were sent, one in April and one in June of last year) and the request to the Supreme Court were accompanied by copies of this court's order filed on March 18, 1976, which stated on the first page that Ham was represented here by retained counsel. Both appellate courts (or their support personnel, who have no judicial authority under Article III of the Constitution) either overlooked this fact, or chose to ignore § 1654. The result has been a wholly unwarranted necessity for this judge to respond to the false accusations of a convicted narcotics dealer, a consequence not easily accepted by any overworked judge who is mindful of the limits of his own authority to entertain facially frivolous petitions intended only to harass the courts or responsible state officials.

This court's order filed March 18, 1976 denied Ham's request for a writ of habeas corpus because it was clear on the record that the petitioner had not exhausted all remedies available to him in the courts of South Carolina. The petitioner's retained counsel requested, and received, reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure. After supplemental pleadings were filed, the court authorized subpoenas under 28 U.S.C. § 1825 for three of Ham's former attorneys to appear at a hearing set for August 3, 1977. The hearing consumed all that morning, and testimony was received from the attorneys who are being castigated by Ham for their alleged incompetence. At the conclusion of the hearing, Mr. Foard asked to be relieved as Ham's counsel because only a portion of his fee had been paid. However, he was not relieved,[4] and the court asked opposing counsel to exchange and submit proposed orders. The court entered its own order on October 4, 1977, outlining clearly its reasons for denying relief to petitioner Ham.[5] As observed earlier, two copies of the order were sent to Mr. Foard, one for him and one for the petitioner.

 Under the circumstances outlined briefly herein, Ham has not shown any justification for a belated appeal of this court's decision following the August 3, 1977 hearing. A filing now of a notice of appeal of an order sent to Ham's attorney over six months ago could not give the Court of Appeals jurisdiction under that court's decisions.[6] It is only when a notice of appeal is filed after thirty days but within sixty days of entry of judgment that a justification for a late appeal because of excusable neglect can be found.[7] These time requirements cannot be circumvented by a Rule 60(b) motion, because a judgment cannot be vacated under Rule 60(b) merely to start anew the running of the appeal period.[8]

In *Hampton v. Warden, supra,* a state prisoner through no fault of his own did not receive an order dismissing his § 1983 case for want of prosecution until almost one year after the order was filed. Judge Simons of this district, recognizing that the Marshal had failed to promptly serve the petitioner, entered an order to permit a late appeal. The Court of Appeals dismissed the appeal after stating:

"The district court was without power to enter such an order. Although F.R. Civ.P. 77(d) provides that the Clerk shall serve a notice of the entry of an order on the parties, the same rule also provides that the failure of the Clerk to give notice does not permit the district court to allow a late appeal except as provided by F.R.A.P. 4(a). That rule does not provide for an extension of more than thirty days beyond the ordinary period for filing a notice of appeal."[9]

---

4. The court directed Mr. Foard to submit an appropriate order for consideration, but no order has been filed. He later asked to be court appointed, but no CJA voucher has ever been submitted for payment.

5. Earlier, while the case was under advisement, Ham submitted a *pro se* motion for bail. The court on August 8, 1977 directed him to proceed through counsel. There is an indication in the file that Ham has attempted to appeal this order. The Clerk received a "petition for bail" styled in the Court of Appeals, and sent the Clerk of the Court of Appeals a copy of the docket entries on December 20, 1977.

6. See, e. g., *McDonough v. Calhoun,* No. 75–1375, December 11, 1975; *In re Carter,* No. 75–2302, December 11, 1975; *Kyrollos v. Stevick,* 556 F.2d 573 (4 Cir. 1977); *Hampton v. Warden,* 571 F.2d 576 (4 Cir. 1978); *Myers v. Martin,* 571 F.2d 577 (4 Cir. 1978); and *McDaniel v. Mace,* 573 F.2d 1305 (4 Cir. 1978).

7. *Craig v. Garrison,* 549 F.2d 306 (4th Cir. 1977).

8. *Myers v. Martin, supra,* citing *Hodgson v. UMWA,* 153 U.S.App.D.C. 407, 473 F.2d 118, 124 (1972). *Myers* was a habeas corpus case dismissed for failure to exhaust state remedies.

9. Despite the clear holdings in *Hampton* and *Myers,* and the express language of F.R.C.P. 77(d) and F.R.A.P. 26(b), this court has recently considered a § 2255 case by a federal prisoner who was allowed a late appeal initiated over five months after his motion for a new trial, treated as a motion to vacate sentence, had been denied. This court [Judge Blatt] denied the request for a delayed appeal on two occasions. The prisoner wrote the Court of Appeals. A staff attorney on December 9, 1976 sent the prisoner a notice of appeal and a letter advising him, in part, that his appeal would be docketed if he would merely send Judge Blatt a

In *McDonough, supra,* the Court of Appeals stated (page 3 of slip opinion), " * * * [S]ince the notice of appeal was filed more than 60 days after the entry of the district court's order . . . appellate jurisdiction does not exist even were excusable neglect found." In *Carter, supra,* the court stated (page 3 of slip opinion):

"The petitioner now seeks a writ of mandamus directing the District Court to 'allow the petitioner the opportunity to appeal to this Court for consideration of the allegation of perjury raised and established in the record.'

"The relief sought by the petitioner cannot be granted. Under Rule 4(a) of the Federal Rules of Federal [sic] Procedure, the petitioner was required to file notice of appeal from the denial of habeas relief within thirty days of the entry of judgment. Upon a showing of excusable neglect, the District Court could have extended the time for filing the notice of appeal for an additional period not exceeding thirty days. *Under no circumstance, however, can notice of appeal be filed more than sixty days after judgment.* The power of the district court to grant extensions is limited to Rule 4, and under Rule 26(b) this Court is prohibited from enlarging the time for filing a notice of appeal." [Emphasis added].

Similarly, in *Kyrollos, supra,* the Court of Appeals observed that the notice of appeal was not received by the clerk of court until July 20, 1976 whereas the judgment had been entered on May 19, 1976. The *per curiam* states:

" * * * The plaintiff had thirty days in which to file a notice of appeal . . . F.R.A.P. 4(a). Upon appropriate motion and a finding of excusable neglect, the court could have extended the time for filing for an additional thirty days. In this case, however, the notice was received more than sixty days after the entry of judgment. Kyrollos' notice of appeal would have been untimely even if the maximum extension had been granted. *This Court is without jurisdiction to entertain the appeal* and we shall not speculate upon the plaintiff's eligibility to proceed under 28 U.S.C. § 1915." [Emphasis added].[10]

Ham's request for a transcript exists in a vacuum, so to speak, in view of the clear appearance that he wants a transcript for a purpose he cannot achieve under the cases cited.[11] Therefore, treating his affidavit as a motion under Rule 4(a) of the

*third* request to appeal late, and use the enclosed notice to appeal within ten days after Judge Blatt denied his request a third time. The prisoner complied with his benefactor's advice, Judge Blatt denied the appeal for the third time, the prisoner appealed, and the Court of Appeals remanded the case for consideration on the merits. *United States v. Godfrey,* 564 F.2d 93 (4 Cir. 1977).

This court does not believe the Court of Appeals would expressly sanction the strange procedure followed in that § 2255 case. Therefore, *Godfrey* is not regarded as precedent in Ham's case.

10. The quotations herein from unpublished opinions are set out because of Local Rule 18 of the Court of Appeals, and because the court believes these unpublished opinions have precedential value in relation to a material issue raised by Ham's affidavit. Reproduction of the opinions in their entireties is not necessary to facilitate the petitioner's understanding of the plain language quoted.

11. The prisoner has not particularized a need for a transcript in any event. His belated appeal of his state conviction satisfied the only ground he raised in his federal petition that had facial merit. *State v. Ham,* 268 S.C. 340, 233 S.E.2d 698 (1977). His other grounds were shown at the hearing to be matters as to which viable state remedies were readily available, and Ham's preference of a federal forum notwithstanding, he has not shown that he has exhausted remedies available to him in the courts of South Carolina. Thus, even if he had filed a timely notice of appeal, it is open to doubt that he would have been entitled to a transcript without a showing of a particularized need. *Cf. Jones v. Superintendent,* 460 F.2d 150 (4th Cir. 1972), rehearing denied 465 F.2d 1091 (4th Cir. 1972); *United States v. Glass,* 317 F.2d 200 (4th Cir. 1963); and *United States v. Shoaf,* 341 F.2d 832 (4th Cir. 1964). Numerous unreported cases in the Fourth Circuit have also held that a showing of particularized need must be made by a prisoner in order to obtain a free transcript, and it would seem this firm rule of law would also apply here, where a transcript of a federal post-conviction hearing is sought by a state prisoner.

Federal Rules of Appellate Procedure to extend the time for filing a notice of appeal of the order mailed to his attorney on October 4, 1977,

IT IS ORDERED that the motion is denied; and

IT IS FURTHER ORDERED that a copy of this order shall be mailed by the Clerk of Court to petitioner Ham, to his attorney, to the Attorney General of South Carolina, and to the Clerk of the United States Court of Appeals for the Fourth Circuit.[12]

12. Because of the obvious jurisdictional question discussed herein, the court has not viewed Ham's affidavit as a notice of appeal that would necessitate the issuance or denial of a certificate or probable cause to appeal under 28 U.S.C. § 2253. However, Ham is an activist, as *pro se* litigants go, so he in all probability will contact the Court of Appeals. A copy of this order may be of assistance to that court if Ham does contact it. *Cf. Liles v. South Carolina Department of Corrections*, 414 F.2d 612 (4th Cir. 1969). This file is voluminous, so the Clerk shall not transmit it to Richmond unless a Circuit Judge directs such transmittal.