1842

The STATE, Respondent v. Stanley Herman DAVIS, Appellant.

(419 S.E. (2d) 820)

Court of Appeals

*Stephen John Henry, Taylor, Stephenson & Henry,* Greenville, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *James W. Rion, III,* Columbia, and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard April 7, 1992.

Decided June 22, 1992.

SHAW, Judge:

Appellant, Stanley Herman Davis, was found guilty of pointing and presenting a firearm in violation of S.C. Code Ann. § 16-23-410 (1985). He was sentenced to three years of confinement suspended upon the service of one year or payment of a $2,000 fine and costs, and two years probation. Davis appeals. We affirm.

The record reveals that on the morning of November 21, 1990, undercover Wildlife officers were intermittently pa-

trolling a secondary road in rural McCormick County in an unmarked truck. At approximately 11:30 a.m., Davis emerged from the woods into the middle of the road with his rifle as Officer Greg McDaniel drove along the road. Officer McDaniel testified he was traveling approximately 35 miles per hour when he saw Davis coming from the woods. He stated Davis pointed his rifle at the truck and he slowed the vehicle in an attempt to ease past Davis, but Davis shouldered the gun and ordered him to stop, declaring "Stop or I'll kill you, you son of a bitch." Officer McDaniel stopped the vehicle and exited it at Davis' instruction. Davis stepped back to the tail gate of the truck, keeping the rifle pointed at the officer. The officer identified himself at which point Davis lowered his rifle and the officer confiscated it. Other officers arrived on the scene shortly thereafter and Davis was arrested.

Davis first contends the trial judge erred in allowing cross-examination and testimony concerning prior altercations between Davis and other hunters and incidents of prior harassment of other hunters in the area of the alleged crime. We disagree.

Before trial, Davis moved to exclude any evidence concerning prior incidents in which he allegedly was involved in pointing and presenting a firearm. The State responded it did not intend to go into prior instances, but did intend to provide background to show why the officers were in the area. Davis then asked that any complaints received by the officers be excluded as the jury would likely relate them to him. The trial judge found references to previous complaints in the area supplied appropriate background.

On direct examination, Officer Marvin English testified that on the morning of November 21, he was assigned to work with Officer McDaniel. They were working undercover on an unrelated incident at a duck pond but no one showed up there. He then informed Officer McDaniel of a complaint he received the day before relating to the area where David was arrested and they therefore decided to patrol that area. When asked the purpose of patrolling this area, Officer English responded, "We were trying to get the attention of the people in the area, some hunters that had been harassing people along that highway." When Officer McDaniel was later asked on direct whether he had a conversation with Officer English prompt-

ing them to patrol the area in question, he responded, "Yes, sir. We had gotten at the duck pond before daylight. We stayed there for some time. Nobody ever showed up. Sgt. English said that he had had a complaint and for us to head toward Mt. Vernon Church Road."

Davis argues this testimony suggested to the jury that the complaints were related to him and caused his character to be improperly introduced into the evidence at trial. We first note that David made no contemporaneous objection to any of the above testimony. *See Williams v. State of South Carolina*, 740 F. Supp. 1200 (D.S.C. 1990) (citing *State v. Lynn*, 277 S.C. 222, 284 S.E. (2d) 786 (1981) for the proposition that an objection is waived unless made contemporaneously to the objectionable testimony). Further, the testimony regarding the complaints was minimal and made absolutely no mention of Davis. The admission of this evidence was within the sound discretion of the trial judge. *State v. Sims*, 304 S.C. 409, 405 S.E. (2d) 377 (1991). We find no abuse of that discretion.

Davis further argues error in the allowance of certain questions in his cross-examination. He argues the questions had the effect of trying him on several charges at one time and prejudicing him in the eyes of the jury and improperly placing his character in evidence. He points specifically to the following exchanges:

> Q. You haven't had any conversations or disputes with anyone about hunting on game management land or Beard and Rack land?
> MR. CALLISON: Your Honor, I object to the question about disputes or anything about hunting on property. That's not what this case is about. This is limited to November 21, 1990.
> THE COURT: For the time being I will overrule your objection and allow you to renew it, depending on how far we go with it.
>
> \* \* \* \* \* \*
>
> Q. Of course, you wouldn't point a firearm at this officer or any person, would you?
> A. No, sir.
> Q. Sir?
> A. No, sir.

MR. CALLISON: Your Honor, I object to the testimony—

THE COURT: Objection overruled.

Q. You've never done that in the past, have you, sir?

MR. CALLISON: Objection, again, your Honor.

THE COURT: Overruled, sir.

Q. And you have never pointed a firearm at Ms. Fowler while she was hunting, have you?

A. No sir. Never.

Q. And you have never pointed a firearm at or harassed the Roddeys while they were hunting, have you?

A. Never.

Q. And wouldn't do that, of course?

A. No, sir.

MR. CALLISON: Your Honor, I would like to renew my objection. He is attempting to put in the character of my client.

THE COURT: No. He is not. The objection is overruled. He is just attempting to form a chain of events.

When an accused takes the stand, he becomes subject to impeachment like any other witness and, regardless of whether he offers evidence of his good character, he may be cross-examined about past transactions tending to affect his credibility. *State v. Major*, 301 S.C. 181, 391 S.E. (2d) 235 (1990). He may be asked about prior bad acts, not the subject of a conviction, which go to his credibility and when the accused denies the prior misconduct, the State must accept the answer. *Id.* 391 S.E. (2d) at 237. On direct examination, Davis denied pointing the rifle at Officer McDaniel or threatening him with the weapon and indicated his actions were motivated purely by his concern for the safety of himself and his companions. Clearly, the questions by the State were relevant and proper cross-examination. The State having accepted Davis's denials without further questioning, we find no error. In any event, Davis responded negatively to the questions, so no prejudice resulted. *State v. Young*, — S.C. —, 409 S.E. (2d) 352 (1991).

Davis next contends the trial judge erred in failing to grant his motion for directed verdict based on evidence of self-defense, defense of property and defense of others and that he further erred in refusing to charge the jury on the same. We disagree. The record indicates that while Officers

McDaniel and English were first patrolling the area in question, Officer McDaniel fired his service revolver into a bank at the side of the road in an attempt to attract the attention to the subjects on whom they had received complaints. When this resulted in no response, the officers left the area and, approximately one and one-half hours later, Officer McDaniel returned to the area alone. He stated that he drove down Mt. Vernon Church road, saw a vehicle parked in the woods and "tooted the horn once." He drove down a highway and returned to the area at which time Davis emerged from the woods, pointing his rifle and demanding that Officer McDaniel stop.

Although Davis claimed the behavior of the Wildlife officers was much more aggressive and threatening than the officers portrayed, it is undisputed that he approached Officer McDaniel's truck on a public road with his rifle in his hand. Davis denied ever pointing his rifle at Officer McDaniel.

In considering a motion for directed verdict, the trial judge is concerned with the existence or non-existence of the evidence, not its weight. The evidence must be viewed in a light most favorable to the State. *State v. Mathis*, 287 S.C. 589, 340 S.E. (2d) 538 (1986). Viewing the evidence in a light most favorable to the State, it appears Davis was acting in an aggressive and not a defensive manner. Further, because Davis and his companions denied he pointed or presented the rifle at the officer, the only question presented to the jury by the defense's version was whether or not he was guilty of pointing or presenting a firearm, not whether he did so in defense of himself, others or property. Accordingly, a charge of self-defense did not apply and the trial judge properly refused such instruction to the jury.

Davis next contends the trial judge erred in denying his motion for directed verdict on the ground that the action of the Wildlife Department violated his rights to due process of law. In support of the argument, Davis relies on the behavior of the officers in driving up and down the road in an undercover truck and firing a pistol in the area. He cites 21 Am. Jur. (2d) *Criminal Law* § 203 (1981) which states government conduct may lead to acquittal on due process grounds where the government's involvement in the crime is outrageous and reprehensible. Even is we were to find this proposition applicable, the evidence does not appear to exist, as a

matter of law, that the government's conduct was so outrageous and reprehensible to amount to a violation of Davis' due process rights. Accordingly, the trial judge properly denied this motion.

Davis also contends the trial judge erred in refusing to admit evidence of the Wildlife Department's firearms policy. We disagree. During cross-examination of Officer English, Davis attempted to question him about the Department's firearms policy. The trial judge sustained the prosecution's objection. Davis then attempted to introduce the policy into evidence and the trial judge again sustained the prosecution's objection. On appeal, Davis alleges the firearms policy was directly relevant to the issues at trial and would have shown the officers violated their own internal policies concerning the discharge of firearms. However, Davis made no proffer of Officer English's testimony on this matter. Nor did he proffer the policy itself. Therefore, there is no support for this allegation. Having failed to proffer the evidence, the issue is not reviewable. *See State v. Anderson*, 304 S.C. 551, 406 S.E. (2d) 152 (1991) (a reviewing court may not rule on alleged error in the exclusion of evidence unless the record on appeal shows fairly what the rejected evidence would have been.).

Davis also asserts error in the trial judge's refusal to charge S.C. Code Ann. § 50-3-130 (1986) relating to the requirement that Wildlife officers be attired in uniform while on duty. He summarily argues the dress and manner of the Wildlife officers involved was directly relevant to the issues raised. We disagree. Even if we were to accept that this code section mandates all Wildlife officers to be in uniform at all times while on duty,[1] such is irrelevant to the crime for which Davis was charged, that is, pointing or presenting a firearm. The fact that McDaniel was a Wildlife officer is immaterial to whether Davis was guilty of pointing or presenting a firearm.

Finally, Davis contends the trial judge erred in failing to suppress evidence of oral statements made by him since disclosure was not made by the prosecution despite a timely request. We disagree.

---

[1] We are not ready to accept Davis' interpretation of this code section which would preclude Wildlife officers from engaging in any "undercover" or "plain clothes" law enforcement activities.

At trial, the court admitted two statements Davis allegedly made to Wildlife officers. Following his arrest, Davis allegedly stated that he knew what he had been doing was wrong and that he would rather handle the trespassers and then call the Wildlife Department. Later on at the station, the officer serving the arrest warrant read from the warrant the statement allegedly made to Officer McDaniel, "Stop or I'll kill you, you son of a bitch." Davis interrupted her asserting he had said, "If you come back down this road I'll kill you, you son of a bitch."

Before trial Davis attempted to suppress these statements asserting he had served a Rule 5, S.C.R. Crim. P. discovery request and had not received the substance of the statements. The State denied receiving a Rule 5 request, but offered to let Davis examine the file. Davis renewed his motion to suppress which the trial judge denied. He then accepted the court's offer allowing him copies of the statements. No further motions or requests were made on this point.

Rule 5(a)(1)(A) provides that upon request by the defendant, the prosecution shall permit the defendant to inspect and copy or photograph the substance of any oral statement which the prosecution intends to offer in evidence at the trial which was made by the defendant in response to interrogation. There was no actual evidence presented at trial that Davis served a Rule 5 request. Further, under Rule 5(d)(2), where a party fails to comply with the rule, the court may order the noncomplying party to permit inspection, grant a continuance, prohibit introduction of the nondisclosed evidence, or enter such order as it deems just under the circumstances. Sanctions for noncompliance with disclosure rules are within the discretion of the trial judge and will not be disturbed absent an abuse of discretion. *State v. Scipio*, 283 S.C. 124, 322 S.E. (2d) 15 (1984).

Davis was permitted to view and copy the State's file on this matter. He never requested a continuance or recess in order to review the file. We find no abuse of discretion in the trial judge's denial of Davis' motion to suppress.

Affirmed.

SANDERS, C.J., and BRUCE LITTLEJOHN, Acting Judge, concur.