623 S.E.2d 865

**The STATE, Respondent,**

v.

**Earnetta Marie KING, Appellant.**

No. 4045.

Court of Appeals of South Carolina.

Heard Nov. 8, 2005.

Filed Nov. 21, 2005.

Rehearing Denied Jan. 19, 2006.

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

ANDERSON, J.:

Earnetta Marie King and her boyfriend, Patrick Walker, were jointly tried for the murder of her son, Rodrekus King. King appeals her conviction for murder. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Early March 22, 2002, paramedics responded to a call from Patrick Walker. The call concerned the condition of Rodrekus King, Earnetta Marie King's thirteen-year-old son. When the paramedics arrived, King met them outside and told them her son was not breathing. She escorted them into the house. Once inside, the paramedics found Rodrekus lying on the kitchen floor. He was naked, unresponsive, and pulseless. The paramedics saw Walker attempting to administer artificial respiration to Rodrekus. Rodrekus was transported to Greenville Memorial Hospital, where he later died.

At the time of death, Rodrekus was covered with bruises, small cuts, and "avulsed skin." An extensive hematoma cov-

ered half of Rodrekus's head. Dr. Michael Ward, a forensic pathologist and the medical examiner for Greenville County, performed the autopsy. Dr. Ward determined Rodrekus died "as the result of multiple blunt force injuries."

At trial, King blamed Walker for the murder of Rodrekus, and Walker blamed King. King testified Walker was solely responsible for the physical abuse that led to Rodrekus's death. She claimed she did not hit or in any way assault Rodrekus. King professed Walker repeatedly punched, kicked, and struck Rodrekus with a mop handle and broom.

In support of her assertion that Walker acted alone, King attempted to admit a handwritten letter from Walker to Mesha Thomason, Walker's former girlfriend. King's counsel, Walker's counsel, and the Solicitor believed the letter to be a confession of the crime by Walker. Because the letter was not divulged to Walker's attorney until the day the Solicitor sought to put Thomason on the stand, the trial judge held the State violated Rule 5, SCRCrimP, and excluded the letter. The judge nevertheless allowed Thomason to testify, so long as she did not discuss the statements Walker made in the letter.

King's attorney inquired about his ability to put Thomason on the stand as a defense witness. The following colloquy occurred:

[King's Attorney]: Well, your Honor, I would just—in regard to Mesha Thomason, obviously, we didn't know [your position] in regard to the State's case. But when the time comes that we have to make a decision whether to put up any evidence, at that point I think what Ms. Thomason has to say is relevant to our case. And while she did not appear on my witness list, because frankly I assumed she was being called by the Solicitor's office, I would like to have her available to call as a witness in my case.

The Court: Any objection from the State?

[The State]: No objection from the State.

The Court: [Walker's counsel]?

[Walker's Counsel]: Certainly I would object to any testimony about the substance of the alleged letter of confession.

**The Court:** All right. If that happens, the Court will issue its ruling.

The next day, the State rested without Thomason's testimony. Because Thomason was unavailable, King attempted to admit the handwritten letter in her absence. The judge excluded the letter based on the State's violation of Rule 5, SCRCrimP, as well as the unavailability of Thomason.

The following day, however, Thomason was available to testify. Before King's counsel rested, he requested Thomason be allowed to testify to the statements made by Walker in his letter to her. King argued:

> Your Honor, as we discussed off the record, the witness I intended to call that I indicated to the Court yesterday was not available has now become available. That is ... Mesha Thomason. She is the witness who earlier in the trial the solicitor had sought to offer because she received a letter from Patrick Walker which was essentially a confession and under ordinary circumstances would be admissible as a confession by him. The solicitor's office was not able to offer it because the court ruled they didn't comply with the discovery rules. We don't believe those rules would apply to us since we're not the State, and it was certainly not in our control. At this time I would, before closing my case, ... call Mesha Thomason as a witness and introduce that confession through her.

The judge refused to allow Thomason to testify based on his previous ruling that the State failed to turn the letter over to Walker in contravention of Rule 5, SCRCrimP. The judge concluded Thomason had not "shown up in a timely fashion," and, even if she had, her testimony would not be allowed under *State v. Fuller*, 337 S.C. 236, 523 S.E.2d 168 (1999). King countered that because the letter was a confession by Walker, it was by its very nature exculpatory to King, who would be severely prejudiced if the letter was not allowed to be presented. The trial court refused to admit the letter into evidence.

King was found guilty of murder and sentenced to life imprisonment. She appeals the decision by the trial court to exclude Thomason's testimony.

## STANDARD OF REVIEW

■■ The admission or exclusion of evidence is left to the sound discretion of the trial judge. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Staten,* 364 S.C. 7, 610 S.E.2d 823 (Ct.App.2005). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *State v. Preslar,* 364 S.C. 466, 613 S.E.2d 381 (Ct.App.2005); *State v. McLeod,* 362 S.C. 73, 606 S.E.2d 215 (Ct.App.2004). Error without prejudice does not warrant reversal. *State v. Locklair,* 341 S.C. 352, 535 S.E.2d 420 (2000).

■ The decision by the trial judge to exclude evidence for failure to comply with disclosure rules will not be reversed absent an abuse of discretion. *See State v. Kerr,* 330 S.C. 132, 498 S.E.2d 212 (Ct.App.1998); *see also State v. Davis,* 309 S.C. 56, 63, 419 S.E.2d 820, 825 (Ct.App.1992) ("Sanctions for noncompliance with disclosure rules are within the discretion of the trial judge and will not be disturbed absent an abuse of discretion."). An abuse of discretion occurs when the decision by the trial judge is based on an error of law. *State v. McDonald,* 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003).

## LAW/ANALYSIS

■■ King argues the trial judge abused his discretion when he refused to allow Thomason, an available witness, to testify.

■■ Initially, we note King did not proffer Thomason's testimony. Generally, a proffer of testimony is required to preserve the issue of whether that testimony was properly excluded by the trial court. It is well settled that a reviewing court may not consider error alleged in the exclusion of testimony unless the record on appeal shows fairly what the rejected testimony would have been. *State v. Roper,* 274 S.C. 14, 260 S.E.2d 705 (1979); *see also State v. Cabbagestalk,* 281 S.C. 35, 314 S.E.2d 10 (1984) (stating that failure to make offer of proof prevents appellate court from determining whether exclusion of testimony is prejudicial and thus precludes appel-

lant from raising the issue on appeal). However, when it is clear from the record that prejudice exists, the issue will be preserved on appeal despite the absence of a proffer. *See State v. Myers*, 301 S.C. 251, 391 S.E.2d 551 (1990). The reason for the rule requiring a proffer of excluded evidence is to enable the reviewing court to discern prejudice. *Id.* That rule has been relaxed where the record clearly demonstrates prejudice. *Id.*

The record reflects Thomason was going to testify to the statements Walker made in his letter to her. The record clearly indicates King would be prejudiced by the exclusion of Thomason's testimony. Therefore, the issue of whether Thomason's testimony was properly excluded is preserved for review despite the lack of a proffer.

■ Rule 601(a) of the South Carolina Rules of Evidence provides: "Every person is competent to be a witness except as otherwise provided by statute or these rules." Rule 601(a), SCRE. Generally, "[a]ll witnesses are presumed competent to testify." *Sellers v. State*, 362 S.C. 182, 190, 607 S.E.2d 82, 86 (2005). Courts presume a witness to be competent because bias or other defects in a witness's testimony—revealed primarily through cross-examination—affect a witness's credibility and may be weighed by the finder of fact. *State v. Needs*, 333 S.C. 134, 508 S.E.2d 857 (1998).

In the instant case, Thomason was available and "presumed competent to testify." *See Sellers*, 362 S.C. at 190, 607 S.E.2d at 86. Concomitantly, unless a statute or other rule of evidence prevented her from testifying, Thomason should have been allowed to take the stand.

The trial judge determined Thomason could not testify because (1) the State violated Rule 5, SCRCrimP; and (2) her testimony was inadmissible under *State v. Fuller*, 337 S.C. 236, 523 S.E.2d 168 (1999).

## I.  Rule 5, SCRCrimP

■ "The requirements of Rule 5 . . . are judicially created discovery mechanisms for use in criminal proceedings." *State v. Kennerly*, 331 S.C. 442, 503 S.E.2d 214 (Ct.App.1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999). Under Rule 5, the

State should disclose to the defendant "any relevant written or recorded statements made by the defendant ... within the possession, custody or control of the prosecution...." Rule 5(a)(1)(A), SCRCrimP. If the trial judge determines the State has violated Rule 5, the judge has the discretion to fashion a proper remedy. *See State v. Salisbury*, 330 S.C. 250, 498 S.E.2d 655 (Ct.App.1998), *aff'd as modified*, 343 S.C. 520, 541 S.E.2d 247 (2001). The judge may "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Rule 5(d)(2), SCRCrimP.

The trial judge determined that pursuant to Rule 5 the State should have disclosed to Walker's attorney the letter from Walker to Thomason. The judge excluded the letter as well as any "alleged or purported statements" made by Walker because the State violated Rule 5. While this exclusion was beneficial to Walker, it was detrimental to King. The State's violation of Rule 5, and the judge's remedy, deprived King of the opportunity to admit into evidence an alleged statement from Walker that he alone physically assaulted Rodrekus. The judge, in effect, sanctioned King for the inappropriate conduct of the State. Consequently, King was denied the chance to present exculpatory evidence from an available witness.

A trial judge presiding over a joint trial is charged with the difficult task of maintaining the delicate balance between the interests of the State and the interests of each co-defendant. However, each defendant is entitled to call witnesses whose testimony may exculpate or exonerate them. Therefore, the decision to exclude King's witness because *the State* violated Rule 5 was an improper and unjust remedy under the circumstances.

On appeal, the State contends the trial court properly sanctioned it for violating Rule 5. The State noted: "[I]t would have been unjust to allow the State to benefit from the violation, regardless of who introduced the letter into evidence." The State's argument that Thomason should not be allowed to take the stand because the State would benefit

from its own Rule 5 violation is unpersuasive. King claims Thomason's testimony would benefit her defense.

Thomason should have been allowed to testify for King even though the State failed to disclose the letter to Walker's attorney. The trial judge abused his discretion when he refused to allow Thomason to testify based on the fact he had previously sanctioned the State for a Rule 5 violation.

## II. *State v. Fuller*

The trial judge refused to allow Thomason to testify because of the South Carolina Supreme Court's decision in *State v. Fuller*, 337 S.C. 236, 523 S.E.2d 168 (1999). Fuller was convicted of murder and conspiracy, and sentenced to life imprisonment without parole for murder and five years, consecutive, for conspiracy. The State presented a statement from a co-conspirator, Holmes, to a third-party, McKinney. The statement was an admission by Holmes that he and Fuller committed the murder. Because the State could not put Holmes on the stand, as he was killed while committing another crime, it put McKinney on the stand and elicited the statement from him. The trial court held the statement was admissible under Rule 804(b)(3), SCRE, which governs hearsay exceptions when the declarant is unavailable. The Supreme Court reversed, holding:

> The hearsay statements recounted by McKinney essentially amounted to statements by a deceased third-party that inculpated [Fuller] and subjected the declarant to criminal liability. Thus, the issue before this Court is whether a non-self-inculpatory statement, which is collateral to a self-inculpatory statement, may nonetheless come in under Rule 804(b)(3), SCRE, as a statement made by an unavailable declarant against his penal interest. We conclude that such statements are inadmissible.

*Id.* at 243–44, 523 S.E.2d at 172.

*Fuller* is distinguishable from the case *sub judice*. First, unlike the declarant in *Fuller*, the declarant in this case, Walker, is available to testify—Walker is not unavailable under Rule 804, SCRE, simply because he invoked his fifth amendment privilege against self-incrimination. *See State v.*

*Terry*, 339 S.C. 352, 529 S.E.2d 274 (2000). Second, Walker, the declarant in this case, does not make incriminating statements about himself *and* a co-defendant. Rather, the declarant makes incriminating statements about himself only. Walker states in the letter to Thomason that he was solely responsible for the murder of Rodrekus. Thomason can testify to the statements made in Walker's letter without violating *Fuller* because Walker's statements are "self-inculpatory" only. This is not a *Fuller* case because Walker does not inculpate King.

*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is not implicated. A *Bruton* violation occurs when two defendants, A and B, are tried jointly, and defendant A makes a confession that inculpates defendant B. If defendant A does not testify, then A's statement against B is inadmissible because B will be unable to exercise his right under the Confrontation Clause to cross-examine A. Here, Walker made a confession to Thomason, but *did not* inculpate King. Thus, *Bruton* has not been violated.

The trial judge committed an error of law by refusing to allow Thomason to testify based on Rule 804(b)(3), SCRE, and *State v. Fuller*.

## CONCLUSION

We conclude the trial judge abused his discretion when he refused to allow Thomason to testify. Neither Rule 5, SCRCrimP, nor *State v. Fuller*, 337 S.C. 236, 523 S.E.2d 168 (1999), prevented Thomason from testifying for King. Pellucidly, the error committed by the circuit judge is coupled with prejudice as a matter of law. Accordingly, the decision of the trial court is

**REVERSED and REMANDED.**

GOOLSBY and SHORT, JJ., concur.